## FELLOWS *v.* WYMAN.

After dissolution of a partnership, one partner cannot, without authority from the others, endorse a note belonging to the firm, and payable to them or order.

If one partner, after dissolution, without consideration, fraudulently discharge a promissory note belonging to the partnership, and made payable to them or order, the fraud will not give the other partner authority to endorse the note without recourse in the name of the firm ; and if he undertake so to endorse the note, an action at law cannot be maintained on it in the name of the indorsee.

ASSUMPSIT on a promissory note, dated April 1, 1851, for $721, signed by the defendant, and payable to Wyman & Gear, or order, on demand, with interest, and by them endorsed to the plaintiff.

The writ was dated September 11, 1854. Plea, the general issue.

It appeared in evidence that Wyman & Gear were doing business in Concord as butchers, and on the 1st of April, 1851, sold out their stock of meat and other property to the defendant, and their note was given in part consideration for the same ; that Wyman & Gear quit business at that time as partners, and have not done any together since ; that no formal dissolution of partnership or division of property has ever taken place between them, but the understanding between them was that each one should settle with their customers, and those with whom they had dealings, as they had opportunity.

It appeared further that $600 of the principal of the note had been paid by the defendant—he objecting to the payment of the balance on the ground that some of the meat received by him of the payees did not answer the recommendation. The evidence tended to show that in April, 1853, Wyman, one of the payees, made a settlement with the defendant, and gave him a receipt in full of all demands, signed with the name of the firm—the note at that time being in the hands of Gear, the other partner.

In August, 1854, Gear endorsed the note without recourse to the plaintiff, (using the name of the firm,) in payment of a pri-

vate debt of his own, for certain machines which he had received of the plaintiff.

At the time the note was endorsed by Gear, the plaintiff knew that there was a difficulty about the note.

In answer to the evidence tending to show a settlement of the note in April, 1853, the plaintiff contended that the settlement was without consideration, and fraudulent, and introduced evidence tending to show that his position was correct.

The defendant contended that the note could not be legally transferred by Gear in payment of his private debt, and that therefore the plaintiff could not maintain this action; and, also, that as between this plaintiff and defendant, the plaintiff could not be permitted to show fraud in the settlement in April, 1853.

The court ruled against the defendant's positions, and the jury having returned a verdict for the plaintiff for the balance of the note, the defendant moves to set the same aside and for a new trial.

*Baker & Peabody*, for the defendant.

I.—1. Gear had no authority to pass the note by endorsing it in the firm name, after the firm had quit business as partners. *Lush* v. *Smith*, 8 Barb. Sup. Ct. 570; *Bell* v. *Morrison*, 1 Pet. 351; *Neal* v. *Hassam*, 3 McCord 278.

One partner cannot, after the dissolution of the firm, (and the firm was virtually dissolved) endorse notes or bills given to the firm before dissolution, although authorized to settle the copartnership concerns. Story on Prom. Notes, sec. 125; *Sanford* v. *Mickles*, 4 Johns. 224; Chitty on Bills (10 Am. ed.) 51.

2. Even though Gear could have endorsed the note in the firm name after the dissolution, to pay partnership debts, his endorsement and transfer of it to the plaintiff in payment of his private debts, without the consent of his partner, was a fraud. No interest passed to the plaintiff by the transaction, and he cannot maintain this action. *Davenport* v. *Runlett*, 3 N. H. 391; *Williams* v. *Gilchrist*, 11 N. H. 535. The act of a separate creditor in taking the note, or endorsement, or partnership

security of a firm in discharge of a private debt of one of the partners, is a fraud on the part of the creditor. " The transaction will be treated as a nullity." Collyer on Part., sec. 494, 496, and cases there cited; also sec. 500; Story on Part., sec. 132, and cases there cited; 3 Kent Com. (5th ed.) 42, or 1st ed., p. 13; Hovenden on Fraud, vol. 2, p. 153; 3 Blackf. 57; S. C., 3 Blackf. 261; *Clay* v. *Cottrell,* 6 Harris 408; *Lang* v. *Waring,* 17 Ala. 145.

Unless the knowledge, and assent or ratification of the other members of the firm are proved. *Kenney* v. *Richards,* 11 Barb. Sup. Ct. 312; *McKinney* v. *Brights,* 4 Harris 399; *Millier* v. *Richardson,* 2 Iredell 250.

II. The defendant proved a receipt in full of all demands, signed by Wyman in the firm name of Wyman & Gear, and executed prior to the endorsement of the note to the plaintiff.

The plaintiff alleges that this transaction was a fraud upon Gear, of the firm of Wyman & Gear, and is no answer to this suit. But we say, that, as between this plaintiff and defendant, that question cannot arise. Gear is the only party who can raise the question of fraud. *Ayers* v. *Hewitt,* 19 Maine 287; *Galloway* v. *Holmes,* 1 Doug. 330.

If the endorsement to the plaintiff in fact passed the note— the note being overdue at the time of endorsement—the plaintiff took only the rights that the firm had acquired. The plaintiff is affected by all the equities between the original parties.

At the time of endorsement the firm could not have maintained an action upon the note against the defendant. *Jones* v. *Yates,* 9 Barn. & Cress. 532, cited in 10 N. H. 181. And this upon the principle, " *nemo allegans*" &c. Chitty on Bills (10th Am. ed., 1842, p. 60, sec. 6.) The case, *Homer & al.* v. *Wood & al.,* p. 103, Law Reporter, June, 1855, is precisely in point, and maintains this doctrine to the full extent. This case was decided at the March term, 1853, of the Mass. S. J. C.

*Flint & Bryant,* for the plaintiff.

I. To defeat the plaintiff's claim the defendant relied upon a

pretended settlement, which the jury found to be fraudulent and without consideration, which is sufficient to render any act or transaction a mere nullity as against any party whatever. *Sheriff* v. *Wilks & als.*, 1 East 48, 51, 53; *Hoitt* v. *Holcomb*, 3 Foster 533; 2 Parsons on Contracts 264, 279.

II. Either partner has power by law to endorse in the firm name and transfer a partnership note. Chitty on Bills 30, 33, 123; Chitty on Cont. 249; *Swan* v. *Steele*, 7 East 210.

Moreover, the case finds that there was an agreement in this instance that either partner might settle and adjust their partnership affairs.

III. The transfer of partnership property, if *bona fide* and unaccompanied by fraud and covin, by one partner to pay his private debt, is valid and binding. *Ridley* v. *Taylor*, 13 East 175; *Swan* v. *Steele*, 7 East 510; Chitty on Bills 33.

In this case there is no allegation or presumption of any fraud or covin between the plaintiff and Gear; and it is to be understood that Gear's partner is not injured by the transaction; that Gear is responsible and willing to respond to the partnership for this debt, and that he has not unfaithfully discharged the trust committed to him by his partner, to settle up the partnership affairs, especially as there is no proof or allegation to the contrary. And it will be remembered that this note was endorsed without recourse to the partnership, and for the full face of the note then due; and this disposition of the note was as advantageous to the partnership as it would have been to have collected the money on the note of the defendant.

It is true, the case finds " the plaintiff knew that there was a difficulty about the note at the time the note was endorsed by Gear," and the case also finds what the difficulty was, viz., " that the defendant contended that some of the meat received by him of the payees did not answer the recommendation."

If this were so, this defence was open to the defendant in the suit by this plaintiff, equally as if the suit had been brought by the payees—the note being overdue when endorsed; and, moreover, the defendant set up this matter in defence before

the jury at the trial, and by their verdict they found the defence without foundation.

IV. It is submitted that this defendant does not stand in a position to inquire into the consideration or circumstances of the transfer of the note from the payees to the plaintiff.

The plaintiff brings the note into court, and it is fairly endorsed to him by the payees, and has not been paid. Why, then, should not the defendant pay it to the plaintiff?

V. In this case the partnership had never been dissolved. The case so finds; and further, that there was a mutual agreement that each partner " should settle with their customers, and those with whom they had dealings, as they had opportunity."

Having an opportunity to dispose of this note for its full amount, Gear was acting in good faith to the partnership in selling it. The firm not being dissolved, he had a clear right to dispose of the whole partnership effects. *Fox* v. *Hanbury*, Cowper 448. And the right to settle the note includes the right to sell it for the full amount without recourse.

VI. It was the fraud of the defendant in the pretended settlement that the plaintiff complained of, and not that of either partner. And if the court hold *Jones* v. *Yates*, 9 Barn. & Cr. 532, to be law, and applicable to this case, then, upon the authority of that case, the endorsement of Gear transferred the note to the plaintiff as against Gear, and neither Gear nor the firm of Wyman & Gear could maintain a suit against the defendant on this note after the transfer to the plaintiff; and so, if the defendant is not compelled to pay the note to the plaintiff, he avoids the payment of it entirely, and that by his own fraud; and the plaintiff, without fraud or wrong, loses as well the note for which he has paid, as his own debt against Gear.

PERLEY, C. J.* The dissolution of a partnership may be implied from circumstances. Story on Part., sec. 272. And a firm is dissolved by the destruction of the thing which is the sub-

* FOWLER, J., having been of counsel, did not sit.

ject of the partnership. Story on Part., secs. 280, 281. *Res vero intereunt cum aut nullæ relinquantur aut conditionem mutaverint.* Wyman & Gear had sold out their stock, discontinued their business, and made arrangements for the settlement of the partnership transactions. Here was evidence at least from which the jury might infer a dissolution; and for the purposes of this case the partnership must be taken to have been dissolved before the note was endorsed by Gear.

There are certain powers which remain to each partner after a dissolution. Thus the admissions of a partner, made after dissolution, are competent evidence, as the law is held in this State, against the firm as to any contract made prior to the dissolution. *Mann* v. *Locke*, 11 N. H. 246. And one partner, after dissolution, may sell and dispose of the partnership property, for the benefit of the partnership and to wind up its concerns. Story on Part., sec. 322. But as a general rule he cannot create any new contracts or obligations binding on the partnership, and the endorsement of securities belonging to the firm falls under this general rule. Ibid. The cases which hold that one partner, after dissolution, cannot endorse a note or bill, " have been determined with a view of protecting one partner from a responsibility which might be created against him in consequence of the negotiation of the bill" or note. This reason might not be thought to apply where the bill or note was endorsed without recourse. But the cases do not seem to have admitted any distinction in favor of an endorsement without recourse; perhaps on the ground that such an endorsement is a contract, and would imply certain obligations on the part of the firm, though they could not be charged as endorsers—*Sanford* v. *Mickles*, 4 Johns. 224 ; and an authority to settle the partnership business does not authorize a partner, after dissolution, to endorse the negotiable paper of the firm, though, with such an authority, he may transfer a note payable to bearer by delivery. *Parker* v. *M'Comber*, 18 Pick. 505.

This general rule will not of course apply where a partner, after dissolution, has authority from the other partners to endorse in the name of the firm; and such authority may be implied

from circumstances. If, for instance, the property of the firm on a dissolution were divided among the partners, and bills or notes by this division became the sole property of one partner, he would have an implied authority to endorse the bills or notes without recourse, for the purpose of collection or sale ; otherwise the owner would not have the full and fair benefit of the property assigned to him ; he could not dispose of it in the ordinary way, which must have been contemplated on the division. *Yale* v. *Eames,* 1 Met. 486 ; *Waite* v. *Foster,* 33 Maine 424.

As a general rule, one partner, either before or after dissolution, cannot apply the funds of the partnership to the payment of his private debts, or in any way to his individual use, because it would be in derogation of the rights of the other partners, and a fraud on them. Story on Part. 197. But the presumption of fraud or misapplication may be rebutted by the circumstances of the particular case ; as, if the partner had acquired an exclusive interest in the property, which he applied to his separate use, it would be no fraud on the other partners, nor any injury to them. Story on Part. 199, 200.

By the general rule of law, then, Gear, after the dissolution, had no power to endorse the partnership securities, nor to apply the partnership funds to his separate use ; and a general authority to settle debts due to the firm would not take the case out of this rule. *Sanford* v. *Mickles,* 4 Johns. 224 ; *Perrin* v. *Keene,* 1 Appleton 355.

The verdict must be taken to have established the fact that Wyman, the other partner, after the dissolution, and while the note was in Gear's hands with authority to collect, fraudulently settled with the defendant, and without consideration gave a receipt to discharge the note. But though this settlement was made without a real consideration that could avail against the plaintiff in equity, yet, purporting to be on the adjustment of a claim made against the firm by the defendant, it would bind Wyman, the partner who made it, and, in the absence of fraud, the partnership.

This settlement was a fraud on Gear, because he had a lien

on the partnership funds for the payment of partnership debts, and for his share of the partnership funds, when it should be ascertained on a final adjustment; and the debt which was really due from the defendant, and had been fraudulently discharged, would have gone, if it had been collected, into the funds of the partnership, and so in the end to the benefit of Gear for his share.

Whether the fraudulent discharge of one partner can be set up by a defendant, who, as in this case, is particeps in the fraud, to defeat a suit at law, brought in the name of the firm by the other partner, to recover the debt, is a question upon which the authorities are not agreed. In some cases it has been held that courts of law will protect the equitable interest of the defrauded partner against the fraudulent discharge, as they uniformly do where the assignee of a chose in action brings a suit in the name of the assignor, and the defendant attempts to defeat the suit by a discharge or release, fraudulently obtained from the assignor after the assignment. *Dobb* v. *Halsey,* 16 Johns. 34; *Green* v. *Caldwell,* 5 Cowen 489; *Purdy* v. *Powers,* 6 Barr 492; while in other cases it has been decided that the effect of a release or discharge by one partner cannot, in a suit at law brought in the name of the firm, be avoided by showing that it was obtained by fraudulent collusion with the partner who gave it. These decisions appear to have gone on the ground of technical objection to a joint judgment in favor of two plaintiffs, when it appeared that one of them had no right to recover, which in a suit at law was thought to be insurmountable. *Jones* v. *Yates,* 8 B. & C. 532, is a strong authority to this point. The rule is so stated in Story on Part., sec. 238. The case of *Jones* v. *Yates* is cited, and apparently approved by *Parker,* C. J., in *Greeley* v. *Wyeth,* 10 N. H. 15. There is also a very able judgment of the Supreme Court of Massachusetts, delivered by *Bigelow,* J., in *Homer & a.* v. *Wood & a.,* reported in the Law Reporter for June, 1855, following the English rule, as laid down in Jones v. Yates. In Homer v. Wood the decision is carefully limited to the case where the defendant is innocent of the fraud, and actually pays the demand by discharging a debt

against the individual partner who gave the release ; but the objection to a recovery is conceded in that case to stand on technical ground, and the able reasoning of the court would seem to apply with unabated force to a case where there was fraudulent collusion between the defendant and the partner who made the settlement. The weight of authority appears to be strongly against the right to set up the fraud of a partner in giving a release or discharge to avoid the effect of it, when offered in defence to a suit at law brought for a partnership demand in the name of the firm.

That is not the exact point which arises in the present case ; for this suit is in the name of an endorsee, and judgment is not here sought to be recovered in favor of a plaintiff who has discharged his interest, and has no claim against the defendant. This case is free from that technical objection.

The authorities, however, which maintain that objection, have not regarded the joint and contingent interest of a partner in a partnership demand, sued for the benefit of the firm, in the same light as they do the interest of an assignee, who by the assignment has become the sole equitable owner of a chose in action, and sues in the name of the assignor, to recover it for his own sole benefit. The assignee in such case is treated as the party ; his equitable right to the demand is recognized in a suit at law ; and he is protected in a suit at law against fraudulent attempts of the assignor to release or discharge his interest. When he has recovered the debt the money is his own ; he is not held to account with the assignor or any other party. If a debt due to a partnership should on settlement be transferred to one of the partners, and become his sole property, and afterwards the other partner and the debtor should attempt to discharge it fraudulently, it is not easy to see why the rule applied to other cases of assignment should not be enforced there, and the partner who had become the sole owner by assignment, should not be protected in a suit at law against a fraudulent release or discharge, like another assignee.

But where the partnership is unsettled, and the demand sued

is due to the firm, the case is essentially different. The interest of the partner who brings the action after the discharge, in the partnership and in the demand sued, remains unadjusted. The adjustment cannot be made in a suit at law ; and until it is made it cannot appear what interest the partner who brings the action may have in the demand, or whether he have any ; and this is perhaps one of the reasons why courts of law in such case have generally left the defrauded partner to his remedy in equity.

The question here is, whether Gear, by virtue of the fraudulent settlement between his partner and the defendant, obtained authority to endorse the note in the name of the firm. If Wyman, Gear's partner, had sold this note to him, so as to make him the sole owner, this, we have seen, would have conferred authority to endorse in the name of the firm, as incident to the absolute ownership of the note. The authorities would seem to establish this position. As the defendant and Wyman, the other partner, according to the finding of the jury conspired to defraud Gear, and as the other partner has by his fraudulent discharge renounced all title and claim to the note, and put it out of his power to collect the money due on it, it may be at least plausibly argued that Gear ought to have as full and complete control of the note as if he held it by assignment or sale ; and as the equities of the case on the facts found by the verdict are strong that way, we should have been very willing to find that the law would warrant us in coming to that conclusion, instead of turning the plaintiff round to his remedy in equity.

But we are on the whole of opinion that the assignment of a partnership note to one of the partners, which has been held to give an implied authority to endorse without recourse in the name of the firm, presents a case substantially different from this. The assignment transfers the whole interest to the partner, who is assignee. He recovers the whole amount of the note to his own use without account, and it is from this, his sole and absolute ownership, that his authority to endorse has been implied in law. But in this case, after the fraudulent discharge, Gear was not the sole owner of the note. The note was part of the

funds of the firm, chargeable with the payment of partnership debts, and to be accounted for, if collected, like other partnership property ; and there would be no power in a court of law to settle and adjust the various claims and equities among the parties ultimately interested.

We have, after some hesitation, arrived at the conclusion that the fraud of the defendant and the other partner did not confer on Gear authority to endorse the note without recourse in the name of the firm.   Consequently the verdict must be set aside, and a                                          *New trial granted.*